IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| CARRIER SERVICES GROUP, INC., | ) | CASE NO. 4:15-CV-02626-JRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCHNEIDER LOGISTICS, INC., | ) | JUDGE JOHN R. ADAMS |
| SCHNEIDER TRANSPORTATION | ) | |
| AK TTRANSIT CORPORATION, | ) | |
| W.W. ROWLAND TRUCKING CO. INC., | ) | |
| CARGO SPEED CORP., | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

Defendant W.W. Rowland Trucking Co. Inc. ("Rowland") seeks summary judgement pursuant to Fed. R. Civ. Pro. 56, asserting that Plaintiff Carrier Services Group, Inc. ("Carrier") has failed to establish a prima facie case for liability under 49 U.S.C. § 14706 (the "Carmack Amendment"). Doc. 50-1. Carrier has opposed the motion. Doc. 51. For the reasons stated herein, the Court GRANTS IN PART AND DENIES IN PART Rowland's Motion for Summary Judgment.

I.     FACTS

Carrier is an Ohio corporation engaged in the business of buying and selling new and used telecommunications computer equipment. Doc. 11, p. 3. Carrier purchased thirty-eight pieces of used telecommunications equipment from Austin Tele-Services ("ATS"), a non-party, located in

1

Austin, Texas. The equipment consisted of metal towers, which contained telecommunication related computer components. Carrier paid $25,000.00 for the equipment. Carrier hired Schneider Logistics and Schneider Transportation to arrange for transportation of the order. Schneider Logistics brokered a portion of the load to Rowland. Doc. 50-1 at 2. A Rowland driver arrived at ATS to pick up a portion of the equipment on August 4, 2015. Twenty-five of the thirty-eight pieces of equipment were loaded onto the Rowland truck. The remaining thirteen pieces of equipment were loaded on a separate truck and are not at issue in this case.

The twenty-five towers loaded on August 4, 2015, were accompanied by a clean bill of lading. Rowland has a "no touch" policy for their drivers concerning the handling of loads; Rowland drivers are not responsible for loading the shipments onto the truck, nor are the drivers allowed on the loading docks.

The Rowland truck arrived at the Carrier warehouse in Warren, Ohio, on August 6, 2015. Doc. 50-1 at 3. When the Rowland truck's trailer door was opened, Carrier's Chief Executive Officer, Richard Lee Hartman, testified that some of the equipment towers had fallen over. That day, on the bill of lading, Carrier's General Manager, Terrence Williams, stated that five of the twenty-five pieces received had fallen over and were damaged. Mr. Hartman later testified that he made the decision that the entire load was "scrap" as soon as the truck was opened. Doc. 50-2 at 64. Although he believed the shipment to be scrap, Hartman spent approximately thirty minutes looking at the equipment the following day. Doc. 50-1 at 6. The equipment was not tested, nor were the individual components examined. All twenty-five pieces of equipment were scanned into Carrier's computer system as scrap. All twenty-five pieces are currently in storage at Carrier's warehouse in Leavittsburg, Ohio. Carrier has not produced any material in support of its valuation

of the equipment, lost sales, or customers lost due to the alleged damage to the shipment apart from the testimony of Mr. Hartman.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). A fact must be essential to the outcome of a lawsuit to be "material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Summary judgment will be entered when a party fails to make a "showing sufficient to establish . . . an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ*., 351 F.3d 240, 253 (6th Cir. 2003).

Summary judgment creates a burden-shifting framework. *See Anderson*, 477 U.S. at 250. The moving party has the initial burden of showing there is no genuine issue of material fact. *Plant v. Morton Int'l, Inc*., 212 F.3d 929, 934 (6th Cir. 2000). When evaluating a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The non-moving party may not simply rely on its pleadings; rather it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1996).

## III. LAW AND ANALYSIS

The Carmack Amendment to the Interstate Commerce Act, codified at 49 U.S.C. § 14706, addresses the liability of common carriers for goods lost or damaged during a shipment under the jurisdiction of the Interstate Commerce Commission. *CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd.*, 747 F.3d 339, 353 (6th Cir. 2014). The parties agree that the Amendment applies to the shipment at issue here. To establish a prima facie case for liability under the Carmack Amendment, the plaintiff must satisfy three elements:

> (1) that the initial ("receiving") carrier received the cargo in good condition;
> (2) that the cargo was lost or damaged; and
> (3) the amount of actual loss or damages.

*Id.* Upon an adequate showing of the three elements, the burden shifts to the defendant to demonstrate that it was not negligent and that the damage was instead due to one of five excepted causes:

> (a) an act of God;
> (b) an act of terrorism or war;
> (c) an act of the shipper itself;
> (d) an act of public authority; or
> (e) the inherent vice or nature of the goods.

*Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137-138 (1964). If a defendant-carrier can demonstrate any of the five exceptions, it wins. *CNA Ins. Co.*, 747 F.3d at 353. The Sixth Circuit emphasizes how slight the evidentiary burdens are under the Amendment. If the defendant carrier cannot demonstrate an applicable exception, "then the shipper prevails based on its establishing the—very low threshold—prima facie case." *Id.*

### 1. Initial Receipt

To satisfy the first element of a Carmack Amendment claim, Carrier must demonstrate that the equipment was in good condition when it was received by Rowland at ATS for delivery. In

4

general, a shipper's burden to prove that the goods were received by a carrier in good condition may be satisfied by a proffer of a clean bill of lading for the shipment. *Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2nd Cir. 2004). A bill of lading is the "basic transportation contract between the shipper-consignor and the carrier." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). A "statement in the bill of lading as to 'apparent good order' is prima facie evidence only that, as to parts which were open to inspection and visible, the goods were in good order at the point of origin." *Hoover Motor Express Co. v. United States*, 262 F.2d 832, 834 (6th Cir. 1959) (internal citation omitted); *see also Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 878 (5th Cir. 1996). A "shipper's burden of proving that the goods were delivered to the carrier in good condition may be satisfied by the proffer of a clean bill of lading for the shipment, provided that the cargo was packaged in a way that permitted its inspection by the carrier." *Sec. Ins. Co.*, 391 F.3d at 83.

Rowland's 30(b)(6) deponent testified that there was no notation on the bill of lading indicating that there was a problem with the load. Doc. 51-3, p. 35-36. There is no dispute between the parties that the shipment at issue was accompanied by a clean bill of lading. Doc. 50-3, p.1. In addition to the clean bill of lading, Carrier offers the affidavit of Chris Goldstein, the warehouse supervisor of ATS, who averred that the equipment was in good working order and undamaged condition when it was loaded on the Rowland truck. Doc. 51-1. Carrier further notes that Rowland's drivers are required by company policy to notify their dispatchers of any damage to a cargo on receipt of the cargo. Doc. 51-3, p. 27. Rowland has produced no evidence that such a report was made with regard to this shipment. Doc. 51-3, p. 27. Rowland also has a "no-touch policy" which states drivers are not allowed on the loading dock prior to loading and may not participate in the loading process. Doc. 51-1, p. 8. Rowland contends that its own "no-touch

policy" and the fact that the subject equipment towers contained numerous computer components that were not visible unless their doors were opened prevent Carrier from imputing condition from the bill of lading.

Rowland offers no legal basis for its theory that a unilateral no-touch policy can extinguish liability under the Carmack Amendment. In support of the argument that the multitude of computer components were not visible to the naked eye, Rowland offers cases in which items were shrink wrapped or sealed in containers. *Ohio Star Transp., LLC, v. Roadway Exp., Inc.,* 2010 WL 3666982 (Sept. 14, 2010) (shrink wrapped computers); *A.I.G. v. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 999 (11th Cir. 2003) (Motorola cellphones, in boxes, shrink wrapped on pallets); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line*, *Inc.*, 391 F.3d 77, 83 (2nd Cir. 2004) (packed in containers with numbered seals). Rowland offers nothing to demonstrate that the equipment towers in this instance were shrink wrapped or in sealed containers. The cases cited by Rowland do not stand for the proposition that a carrier must be able to view all computer components to constitute an opportunity to inspect; instead, *Ohio Star* and *A.I.G.* turn on the issue of whether the shipper could determine the nature of the shipment with the naked eye. The photographs of the contents of the shipment show the absence of shrink wrap and the fact that the doors of the equipment towers were accessible and unsecured. Nothing in this record suggests that the towers were damaged prior to shipment or that Rowland's driver was unable to determine the nature of the shipment by observation. In the absence of a legal basis to conclude otherwise, the Court finds the shipment was subject to a clean bill of lading and undamaged on receipt.

2. **Loss or Damage**

Although the Carmack Amendment does not explicitly define "damage," courts have generally found "actual loss or injury," including a decrease in product value, are sufficient under

6

the "very low threshold" established by the Amendment. *Oshkosh Storage Co. v. Kraze Trucking LLC*, 65 F. Supp.3d 634, 637 (E.D. Wis. 2014); *CNA Ins. Co.*, 747 F.3d 339 at 353. Under this element, Carrier offers the testimony of Mr. Hartman, who states that when the Rowland truck's trailer was opened, some of the towers had fallen over and some were still standing. Doc. 50-2, p. 13. Mr. Hartman testified that the towers were loaded with "pallet banding," which is how they typically receive and ship them. Doc. 50-2, p. 13. Mr. Hartman testified that some of the pallets themselves were broken and sticking into the air. Doc. 50-2, p. 13. Mr. Hartman states that he deemed the entire load to be scrap as soon as the truck was opened and that he confirmed his belief by examining the equipment for approximately thirty minutes the following day. Doc. 50-2, 16-17. However, the bill of lading identified only five of the twenty-five pieces as having fallen over and being consequently damaged. Doc. 50-3, p. 1.

None of the twenty-five pieces of equipment were tested. Doc. 50-2, p. 17. Mr. Hartman testified that none of the equipment was tested because the cost of doing so would far exceed the value of the lot. Doc. 50-2, p. 18. According to Mr.Hartman the cost of testing varies depending on the piece of equipment but could cost $2,000.00. Doc. 50-2, p. 18. Mr. Hartman also valued the pieces claimed as damaged between $50.00 and $15,000.00. Doc. 50-2, p. 18. Clearly, for at least a portion of the pieces, the cost of testing would not exceed the value of the piece. Testing even a portion of the pieces would have served as proof of damages, "so long as the sample is sufficient to indicate fairly the quality, condition, and nature of damage to the whole cargo." *Allied Tube & Conduit Corp. v. Southern Pac. Transp. Co.*, 211 F.3d 367, 372 (7th Cir. 2000). In the absence of testing or any independent verification of Mr. Hartman's representation that the entire load was "scrap," this Court is left with the photographs taken of the load when the container was opened and the bill of lading that indicates five of the twenty-five towers were damaged. By

7

Carrier's own representation, twenty of the twenty-five towers had not fallen and were packed as Carrier expected. Under these circumstances, conclusory statements about the condition of the pieces are insufficient, without further evidence, to establish that the entire shipment was damaged upon delivery.

Therefore, Carrier meets its burden under the second element of the Carmack Amendment with regard to the five towers that fell and fails to meet its burden under the second element of the Carmack Amendment with regard to the remaining towers that did not fall.

### 3. Value of loss or damage

Under the Carmack Amendment, the amount of damages is limited to "actual loss." 49 U.S.C. § 14706(a)(1). Actual loss is "ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm." *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 277 (1st Cir. 2000). Recovery of lost profits is permitted, unless they are speculative. *Id.* Evidence of past sales for similar equipment has been deemed too speculative to allow for damages in excess of the purchase price. *Id.* "A damages award must have a rational basis in the evidence." *Id.* at 279. The Carmack Amendment further allows for consequential damages to the extent that they are foreseeable. *Am. Synthetic Rubber Corp. v. Louisville & N.R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970).

Carrier seeks damages in excess of $160,000.00. Carrier paid $25,000.00 for the total thirty-eight piece order, but only twenty-five pieces of equipment were on the shipment at issue here. Carrier has not produced any evidence of an agreement to sell any of the twenty-five pieces, which were purchased as inventory for Carrier's system of "predictive analysis." Doc. 50-2, p. 19, 25. Carrier failed to provide evidence of subsequent demand for the "scrapped" equipment by customers; nothing offered by Carrier indicates a lost sale or customer as a result of the alleged

damage. Mr. Hartman's testimony that Carrier has a history of similar and higher sales compared to what Carrier would have been seeking for the pieces of "scrapped" equipment is, admittedly, speculative: "So I'm buying on futures. If there's[sic] negatives in the market and here's some product . . . I could match these two up. It might not hit for two, three, four, even six months, but I know there's going to be a shortcoming somewhere on some of these commodities . . . ." Doc. 50-2, p. 25. Damages in excess of the purchase price are not appropriate under these circumstances.

As stated, Carrier purchased thirty-eight pieces. Carrier makes a prima facie case for damage to five of the thirty-eight towers. Rowland has not responded with any of the exceptions that excuse liability under the Amendment. Therefore, Carrier has established a prima facie case under the Amendment as to five of the towers.

**IV. CONCLUSION**

For the reasons stated herein, the Court GRANTS IN PART, with respect to liability, as to twenty of the twenty-five towers in the shipment, and DENIES IN PART, with respect to damages, Rowland's Motion for Summary Judgment.

**IT IS SO ORDERED**.

                                         ___/s/ John R. Adams_____
                                         Judge John R. Adams
                                         U.S. DISTRICT JUDGE
                                         UNITED STATES DISTRICT COURT
                                         NORTHERN DISTRICT OF OHIO

Date: September 26, 2017